UNITED STATES DISTRICT COURT       <u>FOR ONLINE PUBLICATION ONLY</u>

EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------x

T-JAI MURPHY,

               Petitioner,                           MEMORANDUM
                                                             <u>AND ORDER</u>
                                                             10-CV-03909 (JG)

          -against-

JOSEPH COSTELLO, Superintendant, Mid-State
Correctional Facility,[1]

               Respondent.

----------------------------------------------------------x

A P P E A R A N C E S :

       T-JAI MITCHELL MURPHY
             08R2185
             Mid-State Correctional Facility
             9005 Old River Road
             P.O. Box 2500
             Marcy, NY 13408
             Petitioner, *Pro Se*

       ANDREW M. CUOMO
             Attorney General of the State of New York
             120 Broadway, 12th Floor
             New York, NY 10271
       By:    Alyson J. Gill
             Paul M. Tarr
             *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

       T-Jai Murphy, currently incarcerated in New York's Mid-State Correctional

Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from

his conviction in Queens County Supreme Court on charges of attempted murder in the second

---

[1]       The name of the respondent in this action has been changed to reflect Murphy's move from Greene Correctional Facility to Mid-State Correctional Facility. *See* Fed. R. Civ. P. 25(d).

degree. Murphy, appearing *pro se*, claims that (1) his plea of guilty was involuntary and unknowing because his trial counsel failed to inform him of various available defenses, (2) his trial counsel provided ineffective assistance by failing to inform Murphy of available defenses or to discover alleged spoliation of evidence, and (3) he was not treated as an "eligible youth" under state law in violation of his due process rights. Because his petition is meritless and time-barred, it is hereby denied.

BACKGROUND

A.    *The Crime and the Arrest*

On the morning of March 26, 2007, Murphy was engaged in visitation with his infant daughter in his home in Queens when his daughter's mother, Jovanna Slade ("Jovanna"), Jovanna's father Jeffrey Slade ("Slade"), and Slade's step-son Jabar Young came to pick up the child. While her father and step-brother waited outside, Jovanna entered Murphy's home and exited shortly afterward with her daughter. They all turned to leave, but moments later they discovered they were being chased by Murphy, who was brandishing a gun. Jovanna and Young ran, carrying Jovanna's daughter, while Slade attempted to distract Murphy by walking into the street. Murphy advanced to within a few steps of Slade and shot him twice at close range. The bullets struck Slade in his stomach and near his heart. *People v. Murphy*, No. 1701/07, at 1-2 (N.Y. Sup. Ct. Jan. 29, 2010) ("*Murphy I*").

Murphy was arraigned on July 23, 2007 on charges of attempted murder in the second degree, assault in the first degree, assault in the second degree, and criminal possession of a weapon in the second degree. Affirmation of Raymond Cash ("Cash Aff.") at ¶ 3. His mother

2

retained attorney Raymond Cash to represent Murphy in this and two other pending criminal

cases.  *Id.*; *see* Exh. A(E).

B.      *The Plea*

On February 5, 2008, Murphy pled guilty before Supreme Court Justice James

Griffin to a charge of attempted murder in the second degree in full satisfaction of the

indictment, in exchange for a sentence of seven years' imprisonment and four years of post-

release supervision.  *See* Cash Aff. at ¶ 4.  Murphy stated that he was of sound mind, he fully

understood the plea agreement, and he was satisfied with the way his attorney had represented

him.  Plea Minutes at 4.  In addition, he agreed to waive his rights to appeal, *id.*, and to petition

for state or federal habeas relief, *People v. Murphy*, No. 1701/07, at 4 (N.Y. Sup. Ct. June 23,

2010) ("*Murphy III*").  He allocuted that he had, "on March 26 of 2007 . . . with the intent to

cause the death of a person, . . . attempted to cause the death of Jeffrey Slade."  Plea Minutes at

6.

Prior to the conclusion of the guilty plea, Murphy's counsel requested that Justice

Griffin "keep an open mind as to [youthful offender] treatment."  *Id.* at 3.  Justice Griffin

responded that because "the crime, at least the Second Count, and the other counts involve a

felony, [Murphy] would not be eligible" for youthful offender status "[u]nless there is specific

circumstances and I don't know of any."  *Id.*  He concluded that the seriousness of the charges in

the indictment and to which Murphy pled guilty precluded Murphy from being eligible for

youthful offender treatment.  *Id.*

C.    *The Sentencing*

On April 23, 2008, just prior to sentencing, Murphy sought to withdraw his plea. Neither he nor Cash explained Murphy's change of heart, but in any event shortly after Murphy's request was made and before it could be decided, Murphy changed his mind again and decided to go through with the sentencing on the plea of guilty. *Murphy I* at 3; *see* Sent. Minutes at 3.

At his sentencing before Justice Kenneth Holder on June 19, 2008, Murphy was sentenced in accordance with the plea bargain to a seven-year term of imprisonment and four years of post-release supervision. Justice Holder made no mention of Murphy's potential classification as an eligible youth. The court also imposed permanent orders of protection in favor of Slade, Jovanna, and Young. Sent. Minutes at 7. Murphy did not file a direct appeal of his sentence. *Murphy I* at 3.

D.    *State Post-Conviction Proceedings*

On October 12, 2009, Murphy moved in state court under New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.10 to vacate the judgment of conviction on the grounds that his plea was unknowing and involuntary and that his attorney provided ineffective assistance by failing to investigate the possibility of a justification defense. *Murphy I*. The prosecution's opposition to the motion included an affirmation by Cash, in which he asserted that he had investigated a justification defense but had rejected it as "doomed to fail." Cash Aff. at ¶ 6.

Murphy's claim of ineffective assistance was denied on January 29, 2010, on both procedural grounds and on the merits. The court held that Murphy's claim was procedurally flawed because he did not include in his submission any affidavit or other evidence from "someone, other than the defendant, with actual knowledge" and because he had

"unjustifiab[ly]" failed to make a record of his allegations of ineffective assistance at his plea or his sentencing. *Murphy I* at 8. The court further found that Murphy's claim was meritless because his defense counsel had negotiated a favorable plea agreement that limited his prison time to only one-third of the sentence he could otherwise have received, had filed an appropriate omnibus motion (including motions for suppression of evidence and other trial-related matters) prior to Murphy's plea, and had thoroughly investigated all possible defenses Murphy might have available. *Id.* at 9. As a result, the court declined to vacate Murphy's sentence on the ground that his plea was involuntary or unknowing. *Id.* at 10. Murphy appealed the trial court's decision but in a decision that does not appear to be included in the record the Second Department affirmed Justice Griffin's decision.

On March 16, 2010, Murphy moved to set aside his sentence under N.Y.C.P.L. § 440.20, arguing that he should have been deemed eligible at sentencing for youthful offender status. *People v. Murphy*, No. 1701/07 (N.Y. Sup. Ct. Apr. 23, 2010) ("*Murphy II*"). This motion was denied on April 23, 2010, again for both procedural and merits-based reasons. First, the court noted that Murphy was not entitled to bring such a motion because he had waived his right to bring any post-conviction proceedings to challenge his conviction or sentence. *Id.* at 7. Second, the court held that the defendant was not an eligible youth because even though the presence of a weapon was not a necessary element of the crime of which he was convicted, the facts underlying the conviction indicated that the defendant was armed at the time of the crime. *Id.* at 8. Because an otherwise-eligible youth is not eligible for youthful offender status if the crime committed was one whose elements included the use of a weapon, the court concluded that Murphy was not an "eligible youth" at the time of the offense. *Id.* A Justice of the Second

Department denied leave to appeal. *People v. Murphy*, No. 1701/07 (N.Y. App. Div. July 27, 2010).

On May 10, 2010, while the appeal on his first § 440 motion was pending, Murphy filed another motion to vacate his sentence, resting on substantially the same points he made in his first two motions. This motion was denied on June 23, 2010, because the court found Murphy had waived his right to move pursuant to § 440, and that his claims were procedurally barred because he made no showing that the court's decision on his most recent § 440 motion (*Murphy II*) was incorrect. *Murphy III* at 5. Murphy did not petition for leave to appeal this denial.

E.      *This Petition*

Murphy filed the instant claim for federal habeas relief on August 20, 2010. He has petitioned for relief on three grounds: first, on the ground of due process, citing an involuntary, unknowing, and unintelligent guilty plea and arguing that he would not have pled guilty had he known about New York's defense of justification (Pet. at 6); second, on the ground of ineffective assistance of counsel, due to his counsel's alleged failure to advise him of the justification defense (Pet. at 7); and third, on the ground of due process and equal protection, citing a "failure to provide the Equal Protection of the Law to an Eligible Youth and imposing Sentence without the Due Procedure" (Pet. at 9). The respondent, represented by the New York State Attorney General, opposed Murphy's petition, and oral argument was held on January 7, 2011. Murphy appeared at the argument by videoconference from the institution in which he is currently serving his sentence.

DISCUSSION

A.    *Standard of Review*

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), a federal habeas court may overturn a state court's ruling on the merits of a claim

only if the state decision was "contrary to, or an unreasonable application of, a clearly

established Federal law, as determined by the Supreme Court of the United States," or "was

based on an unreasonable determination of the facts in light of the evidence presented in the

State Court proceeding."  28 U.S.C. § 2254(d).  In addition to the deference owed to state court

determinations of fact under § 2254(d), subsection (e) requires that a federal habeas court

presume all state court factual determinations to be correct.  The petitioner has the burden of

rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The Supreme Court has interpreted the phrase "clearly established Federal law, as

determined by the Supreme Court of the United States" to mean "the holdings, as opposed to the

dicta," of its decisions at the time of the state court decision.  *Williams v. Taylor*, 529 U.S. 362,

412 (2000).  A decision is "contrary to" clearly established federal law if "the state court arrives

at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the

state decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts."  *Id*. at 412-13.

A decision is "an unreasonable application" of clearly established federal law if a

state court "identifies the correct governing legal principle from [the Supreme Court's] decisions

but unreasonably applies that principle to the facts of [a] prisoner's case."  *Id*. at 413.  An

unreasonable application is more incorrect than a merely erroneous one, *Gilchrist v. O'Keefe*,

260 F.3d 87, 93 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 411), but while "[s]ome increment

of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted)). AEDPA's limited scope of review applies whenever a state court disposes of a state petitioner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.      *Murphy's Petition is Time-Barred*

Under AEDPA, a federal habeas claim is subject to a one-year statutory period of limitation. 28 U.S.C. § 2244(d). Insofar as it is relevant here, the statute provides that the period shall run "from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; . . . [or] the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* §§ 2244(d)(1)(A), 2244(d)(1)(D). The period is tolled during the pendency of state post-conviction or other collateral relief proceedings. *Id.* § 2244(d)(2).

Because Murphy did not seek direct review of his conviction, his conviction became final thirty days after sentence was imposed, on July 19, 2008. N.Y.C.P.L. § 460.10(1); *see Bethea v. Girdich*, 293 F.3d 577 (2d Cir. 2002). His one-year period to file his federal habeas petition therefore expired on July 18, 2009. Although he filed for state post-conviction collateral relief, he did not do so until October 13, 2009, which was after the expiration of his time to file for federal habeas relief. Therefore, unless § 2244(d)(1)(D) or equitable tolling applies, his petition is untimely.

8

Murphy cannot avail himself of the "discovery" rule in § 2244(d)(1)(D), which delays the commencement of AEDPA's one-year limitations period to the date on which the factual predicate of the petitioner's claim or claims could have been discovered by a diligent petitioner. His petition argues that the factual predicate of ground two "was (could have been) partially discovered on about May 6, 2009, and was (could have been) fully discovered in January, 2010." (Pet. at 14.) However, I am not persuaded that Cash's alleged failure to investigate various defense options could not have been discovered by Murphy prior to May 6, 2009. Moreover, it seems clear from Cash's affidavit that Cash did indeed investigate the justification defense. *See Murphy I* at 8; Cash Aff. at ¶¶ 3-6. Thus, in the absence of equitable tolling, which is discussed below, ground two is time-barred.[2]

Murphy also argues that he did not discover the factual predicate of ground three -- that his due process rights were violated because he was not afforded youthful offender status -- until January 2010, when he was assisting another inmate with a legal claim. (Murphy Rep. at 5.) But the statute itself and the relevant case law are easily accessible even in a prison library and could have been discovered far earlier through the exercise of due diligence. *See* N.Y.C.P.L. § 720.10. Thus, ground three is also not saved from the one-year statute of limitations by the "discovery" rule in § 2244(d)(1)(D).

Because the AEDPA one-year period is "a statute of limitations rather than a jurisdictional bar," courts may permit equitable tolling of the period. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). However, equitable tolling is appropriate only where the petitioner

---

[2]    Murphy has not argued that ground one should not be time-barred. (*See* Pet. at 14.) Ground one, which asserts that Murphy's guilty plea was involuntary, is based on the same facts as ground two -- the alleged failure of counsel to investigate various defense options (*compare* Pet. at 6 *with* Pet. at 7). Therefore, even if Murphy had made a § 2244(d)(1)(D) argument with regard to ground one, it would be, and is, time-barred.

shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010).

Murphy does not demonstrate the rare and exceptional circumstances that are required to give rise to equitable tolling. At oral argument he explained that he made diligent efforts, beginning two months after his conviction became final, to obtain records regarding his conviction from the state court and from his attorney. He indicated that the records did not begin to arrive until May of 2009, approximately ten months after his conviction became final, and that they were not complete until September of 2009 -- after his application was already time-barred. He argues that he was not able to submit a habeas petition because he did not have the records on which the petition was to be based.

Although equitable tolling can be appropriate where a petitioner has diligently pursued his claim but has been prevented from filing a petition due to other parties' delay, this is not such a case. Murphy was well aware of the underlying facts that now support his habeas petition. *See supra*. The information he sought from the state and the attorney may have been useful in prosecuting the habeas petition, but they were not necessary for Murphy's assertions that his plea was involuntary, that his counsel failed to properly advise him regarding a defense, and that he was improperly denied youthful offender treatment. Although the records provided by Cash and the state were apparently helpful to Murphy in the construction of his petition, they were not required for Murphy to be able to file his claim.[3] *Jenkins v. Greene*, __ F.3d __, 2010

---

[3]     Justice Griffin declared Murphy's petition procedurally unsound due to the lack of an affidavit from "someone, other than the defendant, with actual knowledge" of the facts Murphy raised in his petition, *see Murphy I* at 8. But New York law is clear that Murphy could have filed an explanation of why no such affidavit was available in lieu of the affidavit itself. *See People v. Radcliffe*, 749 N.Y.S.2d 257, 258 (N.Y. App. Div. 2002)

WL 5186019 (2d Cir. Dec. 23, 2010) (equitable tolling unavailable where delay in filing petition

was due to trial attorney's failure to respond in timely manner to petitioner's request for

affidavit). Cash's and the state's delays in producing documents relating to alleged irregularities

of which Murphy was already aware do not constitute exceptional circumstances justifying

equitable tolling.

In sum, Murphy did not file his petition until after one-year limitations period had

expired, and there are no grounds to excuse his failure. Accordingly, the petition is denied as

untimely.

C.      *Murphy's Claims Have No Merit*

Even if Murphy's petition were not time-barred, it would be denied because his

claims have no merit. The claim that Murphy's guilty plea was involuntary, unknowing, and

unintelligent is flatly refuted by the transcript of the plea proceeding. Murphy was informed of

the rights he would be waiving by pleading guilty and of the sentence he would receive. He

expressed his satisfaction with counsel and stated that his decision to plead guilty to obtain the

seven-year sentence was made of his own free will. Thus, Murphy's claim that his attorney was

ineffective because he failed to inform him of the existence of a justification (or "castle

doctrine") defense is equally meritless.

The standard for evaluating a claim of ineffective assistance of counsel was

established by *Strickland v. Washington*, 466 U.S. 688, 687 (1984):

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so

---

("[T]his court has not required affidavits of counsel where, as here, the defendant is raising an ineffective assistance claim based on an alleged error or omission of trial counsel."). In any event, Justice Griffin went on to reject the ineffective assistance of counsel claim on the merits, a determination with which I agree. *See Murphy I* at 9-10.

serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the results unreliable.

Thus, to make out this type of claim, Murphy must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," *id*. at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694. The state appellate court's denial of Murphy's ineffective assistance claim did not constitute an unreasonable application of this standard.

The defense of justification provides that "conduct which would otherwise constitute an offense is justifiable and not criminal when: . . . (2) [s]uch conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue." N.Y. Penal Law § 35.05. New York's "castle doctrine" (a form of justification defense) provides that "[a] person in possession or control of, or licensed or privileged to be in, a dwelling or an occupied building, who reasonably believes that another person is committing or attempting to commit a burglary of such dwelling or building, may use deadly physical force upon such other person when he or she reasonably

12

believes such to be necessary to prevent or terminate the commission or attempted commission of such burglary." *Id.* § 35.20(3).

The facts of the case cannot possibly support a defense of justification. The state court found that Slade and his family were outside Murphy's home, walking away from the premises, when Murphy exited his home and, apparently unprovoked, threatened the Slade family and shot an unarmed Jeffrey Slade. *See Murphy I* at 1-2 (outlining facts of case); *Murphy II* at 1-2 (same); *Murphy III* at 1-2 (same). The state court found no facts suggesting that Murphy's person or residence were in any danger whatsoever, much less the "imminent" danger contemplated by New York's justification defense statute.[4] Defense counsel could not have reasonably believed a justification defense would succeed.

Accordingly, Cash's strategic decision to accept an advantageous plea bargain, *see Murphy I* at 9, and thereby avoid going to trial on a defense that had no hope of success, *see* Cash Aff. at ¶ 6, cannot be deemed ineffective under *Strickland*. This would be true even if, in retrospect, the outcome for Murphy looked unfavorable. *See Cuevas v. Henderson*, 801 F.2d

---

[4]     Murphy now alleges a different set of facts than the one set forth in the state court decisions, one that he argues meets the requirements for the justification defense. It is obvious from the affidavit of his retained counsel that Murphy did not share these allegations with him. In any event, the state court denied Murphy's claim based on the set of facts summarized on page 2, *supra*. I may not grant habeas relief unless, *inter alia*, the factual basis for the state court's decision was "unreasonable . . . in light of the evidence presented in the state court proceeding." § 2254(d)(2). That factual basis was not unreasonable, and indeed was the only set of facts consistent with the evidence before the court. Moreover, Murphy is not saved by § 2254(e)(2), which permits a federal habeas court to conduct an evidentiary hearing in certain circumstances where a petitioner has failed to develop the factual basis for his claim in the state court. Such hearings are permitted only where the claim relies on a new constitutional rule or on "a factual predicate that could not have been previously discovered through the exercise of due diligence." § 2254(e)(2)(A). Having experienced the facts himself at the time of the incident, Murphy cannot contend that this newly-minted version of what happened on the date in question could not have been discovered in time to allege it in the state court.

     Because the deference owed to state court factual determinations under § 2254(d)(2) requires the denial of Murphy's claim, I need not address what role, if any, the presumption of correctness established by § 2254(e)(1) plays in this case. *See also Wood v. Allen*, 130 S. Ct. 841, 851 (2010) ("Because the resolution of this case does not turn on them, we leave for another day the questions of how and when § 2254(e)(1) applies in challenges to a state court's factual determinations under § 2254(d)(2).").

586, 590 (2d Cir. 1986) ("'[W]e have repeatedly noted our reluctance to second-guess matters of

trial strategy simply because the chosen strategy was not successful.'" (quoting *Trapnell v.*

*United States*, 725 F.2d 149, 155 (2d Cir. 1983))). Here, the outcome for Murphy looks

favorable even with the benefit of hindsight. More to the point, counsel was by no means

constitutionally ineffective for failing to adopt a strategy that would almost certainly not have

resulted in a favorable jury verdict. *See id.* at 689 (establishing a "strong presumption" that

counsel's challenged action constituted "sound trial strategy"). Accordingly, the state court's

denial of Murphy's ineffective assistance claim was not contrary to, or an unreasonable

application of, clearly established federal law.[5]

Murphy next asserts that he was "misinformed by the Court, Counsel, and D.A. as

to his youthful offender el[i]gibility, prior to pleading guilty, and such misinformation

significantly induced the plea agreement." (Pet. at 9.) The term "eligible youth," for the purpose

of a youthful offender designation, encompasses most individuals between the ages of sixteen

and nineteen who commit a misdemeanor or minor felony. *See* N.Y.C.P.L. § 720.10. Youthful

offender status provides an eligible youth an opportunity to receive an informal adjudication in

place of being convicted of a crime. *See id.* § 720.35(1). While "[u]pon conviction of an eligible

youth . . . and at the time of pronouncing sentence the court must determine whether or not the

eligible youth is a youthful offender," *id.* § 720.20(1), in the case of an eligible youth who had

previously been convicted of a criminal offense, that determination is at the discretion of the trial

---

[5]     Murphy alleges in his second ground for habeas relief that "[c]ounsel's failure to investigate" the "Castle doctrine" or the justification defense "caused his failure to discover the Spoliation of Favorable Evidence." (Pet. at 7.) To the extent that this allegation is an attempt to bring a *Brady* claim, this claim is barred as it has not yet been exhausted in the state court. He also alleges various other evidentiary problems that appear to be constitutional violations. (*See id.* at 7-8.) These are unexhausted as well, and moreover they are unsupported by any evidence in the record. They cannot now be brought before this Court.

judge. *Id.* § 720.20(1)(a). Murphy alleges that, because he was not considered an eligible youth, he was unconstitutionally deprived of the opportunity to require Justice Griffin to determine whether Murphy was a youthful offender. (Pet. at 9.)

Murphy's argument regarding his eligibility for youthful offender status fails for two reasons. First, youthful offender status is purely a question of state law, and it is thus not amenable to federal habeas review. Federal habeas relief may not be granted based on an error of state law, absent some federal violation accompanying the state law error.[6] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 ("[F]ederal habeas corpus relief does not lie for errors of state law."). Although Murphy frames this claim for relief as one for "due process and equal protection" (Pet. at 9), his allegations regarding his eligible youth status turn exclusively on whether Murphy would have been eligible under the state statute. Even if Justice Griffin incorrectly determined Murphy's state law right to eligible youth status, Murphy's petition for federal collateral review based on this state law claim would fail.

Second, Murphy's claim fails on the merits because he was not an eligible youth. Although the term "eligible youth" is broadly inclusive, the youthful offender statute specifically excludes individuals whose conviction is for a class A-I or A-II felony.[7] *Id.* § 720.10(2)(a)(i). Attempted murder in the second degree is a class A-II felony. *See id.* §§ 125.25 (second-degree murder is a class A-II felony); 110.05(2) (an attempted class A-II felony is itself a class A-II

---

[6]     This is not a matter of ineffective assistance of counsel, as the record reflects Murphy's counsel's specific request for youthful offender treatment for Murphy, which was rejected on the merits. Plea Minutes at 3.

[7]     Although there are mitigating factors that a judge may consider to obviate the Class A-II felony, *see* N.Y.C.P.L. § 720.10(3), Justice Griffin determined that none of those factors applied to Murphy. Plea Minutes at 3.

felony). Justice Griffin correctly concluded that Murphy was not eligible for youthful offender status because of the crime of which he was convicted. Plea Minutes at 3.

CONCLUSION

For the reasons stated above, the petition is denied. As Murphy has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.


So ordered.


John Gleeson, U.S.D.J.

Dated: January 26, 2011
       Brooklyn, New York